[No. G036848. Fourth Dist., Div. Three. Jan. 31, 2007.]

SAMUEL A. BERRY, Plaintiff and Appellant, v.
AMERICAN EXPRESS PUBLISHING, INC., et al., Defendants and
Respondents.

**COUNSEL**

Matthew S. Hale for Plaintiff and Appellant.

Stroock & Stroock & Lavan, Julia B. Strickland, Stephen J. Newman, Andrew W. Moritz and Alexandria R. Kachadoorian for Defendants and Respondents.

**OPINION**

**ARONSON, J.**—Plaintiff Samuel A. Berry appeals a judgment dismissing the action entered after the trial court sustained without leave to amend demurrers to his complaint for injunctive relief based on the California Consumer Legal Remedies Act (CLRA), Civil Code section 1750 et seq.[1] Berry contends he is entitled to seek injunctive relief under CLRA to enjoin enforcement of an allegedly unconscionable arbitration provision in agreements between cardholders and defendants American Express Travel-Related Services Company, Inc., American Express Centurion Bank, Inc. (AMEX Bank), and American Express Publishing, Inc. (AMEX Publishing) (collectively, AMEX).

---

[1] All statutory references are to the Civil Code unless otherwise noted.

■ Section 1770, subdivision (a), proscribes specified acts or practices "in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." After considering CLRA's text and legislative history, we conclude the extension of credit, such as issuing a credit card, separate and apart from the sale or lease of any specific goods or services, does not fall within the scope of the act. Accordingly, the trial court did not err in sustaining AMEX's demurrer. Because Berry failed to demonstrate he could amend his complaint to state a cause of action under CLRA, the trial court did not abuse its discretion in denying leave to amend. We therefore affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Berry is, and for many years has been, a holder of an American Express card, for which he pays an annual fee. Berry uses the card primarily for his family's personal and household purposes. After Berry obtained the card, AMEX sent him a cardholder agreement which contained a clause calling for the arbitration of all disputes, except for those brought in small claims court, and prohibited the parties from pursuing class action relief.

In the latter part of 2004, Berry began to receive a magazine published by AMEX Publishing entitled "Travel + Leisure." Although Berry had never ordered Travel + Leisure, the October statement for his AMEX card showed a $43 charge for a subscription to the magazine. After calling both AMEX Bank and AMEX Publishing, the subscription was cancelled and the charge removed.

Berry sued AMEX on behalf of himself and others similarly situated, contending AMEX charged them for magazines that were never ordered. After AMEX removed the case to federal court, Berry withdrew all damage claims, causing the federal court to remand the case to state court for failing to meet the amount-in-controversy requirement for federal jurisdiction. (See 28 U.S.C. § 1332.) The trial court then denied AMEX's motion to compel arbitration on Berry's remaining injunctive claims. Following demurrers, Berry amended his complaint to state a single cause of action, which alleged the arbitration clause and class action waiver in the cardholder agreement violated CLRA. Although the amended complaint mentioned AMEX sending magazines to cardholders who did not order them, the only cause of action alleged sought injunctive relief against the arbitration provision.

AMEX filed demurrers to the amended complaint. In opposing the demurrers, Berry did not request leave to amend or demonstrate how he could amend the complaint to state a cause of action. The trial court sustained the demurrers without leave to amend, and dismissed the complaint with prejudice. Berry now appeals.

## II

### STANDARD OF REVIEW

An order sustaining demurrers to class action allegations "is appealable to the extent that it prevents further proceedings as a class action." (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 957, fn. 1 [93 Cal.Rptr.2d 413].) In reviewing a trial court's order sustaining a demurrer, we exercise our independent judgment as to whether a cause of action has been stated as a matter of law. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].) A trial court's denial of leave to amend, however, is reviewed for abuse of discretion. The appellant bears the burden of proving the trial court abused its discretion by demonstrating how he could amend the complaint to state a cause of action. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

## III

### DISCUSSION

*The Issuance of a Credit Card Is Not a "Transaction Intended to Result or Which Results in the Sale or Lease of Goods or Services to Any Consumer" Under CLRA*

Berry's complaint alleges the arbitration clause in AMEX's cardholder agreement is unconscionable, and thus violates section 1770, subdivision (a)(19), which provides, in pertinent part: "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: [¶] . . . [¶] Inserting an unconscionable provision in the contract." AMEX contends the statute does not apply because the issuance of a credit card to Berry was not "a transaction intended to result or which results in the sale or lease of goods or services to [a] consumer . . . ." We agree.

■ This issue is one of first impression. Accordingly, our duty is to construe CLRA's provisions to discern the Legislature's intent. "The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 [48 Cal.Rptr.3d 108, 141 P.3d 225].)

Section 1761, subdivision (d), provides: " 'Consumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." The complaint alleges an AMEX card qualifies as a " 'good' or 'service' " as used in section 1761, subdivision (d). We disagree.[2]

■ Section 1761, subdivision (a), provides: " 'Goods' means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property." The extension of credit is not a tangible chattel. True, a plastic credit card is tangible. But the card has no intrinsic value and exists only as indicia of the credit extended to the cardholder. Berry's AMEX card is thus not a "good" under CLRA.

We now turn to whether AMEX's issuance of credit constitutes a "service" under CLRA. Section 1761, subdivision (b) provides: " 'Services' means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Berry argues that credit furnished by AMEX constitutes " 'services furnished in connection with the sale . . . of goods' " because the cardholder may use the credit provided to purchase goods. Berry explains: "After all a consumer

---

[2] We note that section 1761, subdivision (d) requires the good or service at issue to have been sought or obtained "by purchase or lease." We question whether Berry obtained his AMEX card by "purchase or lease." True, Berry paid an annual fee in connection with the credit issued. But concluding Berry purchased or leased the card would strain the meaning of those terms well beyond customary use. We need not decide this issue because, as we discuss below, the AMEX card constitutes neither a "good" nor a "service" under CLRA.

cannot hire a car, reserve airline tickets, stay in a hotel, or make purchases on the internet without a credit card." A review of CLRA's legislative history, however, does not support the notion that credit, *separate and apart from a specific purchase or lease of a good or service*, is covered under the act.

CLRA's enactment followed findings by the National Advisory Commission on Civil Disorders, appointed by President Lyndon B. Johnson on July 27, 1967, and chaired by Illinois Governor Otto Kerner (the Kerner Commission). Investigating the causes of recent violence in low-income urban areas, the Kerner Commission found that rioters appeared to focus on stores whose merchants had charged exorbitant prices or sold inferior goods. (Reed, *Legislating for the Consumer: An Insider's Analysis of the Consumers Legal Remedies Act* (1971) 2 Pacific L.J. 1, 5.) The report recognized that low-income persons were the most common victims of deceptive sales practices, yet the least likely to seek legal help. (*Ibid.*) Few options and typically poor credit histories induced these consumers to buy goods and services from even the most disreputable merchant. (*Id.* at p. 6.) The Legislature adopted CLRA to mitigate these social and economic problems. (*Id.* at p. 7.) CLRA was the product of intense negotiations between consumer and business groups, and represented a compromise between the two. (*Id.* at p. 8.)

Early drafts of section 1761, subdivision (d), defined "Consumer" as "an individual who seeks or acquires, by purchase or lease, any goods, services, *money, or credit* for personal, family or household purposes." (Assem. Bill No. 292 (1970 Reg. Sess.) as introduced Jan. 21, 1970), italics added.) But the Legislature removed the references to "money" and "credit," before CLRA's enactment, and they do not appear in the current version.

■ "The evolution of a proposed statute after its original introduction in the Senate or Assembly can offer considerable enlightenment as to legislative intent." (*People v. Goodloe* (1995) 37 Cal.App.4th 485, 490 [44 Cal.Rptr.2d 15].) Thus, an oft-cited canon of statutory construction provides: " ' "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision." ' " (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 861 [25 Cal.Rptr.2d 500, 863 P.2d 745]; see *Wilson v. City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555 [7 Cal.Rptr.2d 848]); *Rich v. State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512].) The simple reason for this canon is that a court "should not grant through litigation what could not be achieved through legislation." (*California*

*Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 33 [270 Cal.Rptr. 796] (*Rank*).) Thus, courts must not interpret a statute to include terms the Legislature deleted from earlier drafts. Here, the Legislature's deletion of the terms "money" and "credit" from CLRA's definition of "consumer" strongly counsels us not to stretch the provision to include extensions of credit unrelated to the purchase of any specific good or service.

Berry notes, however, that nothing in CLRA's history explains the reason the Legislature deleted "money" and "credit" from the original draft of section 1761, subdivision (d). Berry cites a series of cases in which the courts rejected application of the statutory construction canon cited above. For example, in *Rank, supra*, 51 Cal.3d 1, the Supreme Court acknowledged the canon, but noted it "cannot apply if the specific language [in the legislation] is replaced by general language that includes the specific instance." (*Id.* at pp. 17–18.) Similarly, in *Isbister v. Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72 [219 Cal.Rptr. 150, 707 P.2d 212], the Supreme Court considered whether the term " 'business establishments' " in the Unruh Civil Rights Act, section 51, included a boy's club. The original version of the bill which became the Unruh Act extended its nondiscriminatory provisions to " 'all public or private groups, organizations, associations, business establishments, schools, and public facilities . . . .' " (*Isbister v. Boys' Club of Santa Cruz, Inc., supra*, at p. 79.) Later versions eliminated all of the specified groups except " 'business establishments,' " but added immediately thereafter the qualifying phrase " 'of every kind whatsoever.' " (*Ibid.*) Instead of narrowing the law, the Supreme Court concluded the Legislature's change preserved the broad scope of the initial version. (*Ibid.*) Berry, however, fails to cite any broadening language added to the bill which became CLRA when the Legislature deleted the terms "money" and "credit." Thus, the principle applied in *Rank* and *Isbister* does not apply here.

Berry also cites *Kabehie v. Zoland* (2002) 102 Cal.App.4th 513, 524 [125 Cal.Rptr.2d 721], which observed that the Legislature's deletion of a clause from the draft of a statute, " 'without more, does not mean that the polar opposite of the clause was enacted . . . .' " *Kabehie* recognized the general principle that the deletion of specific examples initially listed to illustrate the breadth of the statute did not mean those instances were not covered where the provisions governing the statute's scope remained unchanged. Here, the terms "money" and "credit" were not intended as examples of matters covered by CLRA, but were part of a provision *defining* the law's scope. *Kabehie* is thus inapposite.

Other provisions in early drafts of CLRA confirm that deletion of the terms "money" and "credit" narrowed the act's scope. For example, an early draft of section 1780 gave standing to "[a]ny consumer who *obtains credit*, or purchases or leases, or agrees to purchase or lease, goods or services primarily for personal, family, or household purposes, and who thereby suffers any damage . . . ." (Italics added.) The draft's placement of the phrase "obtains credit" demonstrates the Legislature viewed the extension of credit as a separate activity from purchasing or leasing goods and services, rather than an example of it. The final version of section 1780 deleted the specific references to activities covered under the act, and it now confers standing on "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 . . . ."

Section 1770 lists the specific methods, practices, and acts deemed unlawful under CLRA. Most of the matters in section 1770 appear directed toward the purchase and lease of tangible goods and services, and none suggests the statutory language covered extensions of credit unrelated to a specific sale or lease transaction. Moreover, the Legislature considerably narrowed section 1770 before enacting CLRA. For example, an earlier draft of the preface in subdivision (a) required the specified unlawful acts or practices to have been "undertaken by any person in the conduct of any trade or commerce . . . ." The Legislature later narrowed section 1770 to read "undertaken by any person in the sale or lease of goods or services to any consumer . . . ." The current preface to section 1770, subdivision (a), reads: "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Thus, the Legislature unmistakably narrowed the act's scope by limiting liability to transactions involving the actual or contemplated sale or lease of goods and services. Consequently, providing credit *separate and apart* from the sale or lease of any specific good or service falls outside the scope of section 1770.

 In arguing for broad coverage, Berry also cites section 1760, which provides: "This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." We cannot, however, rewrite a statute under the guise of a liberal interpretation. Although CLRA has been interpreted broadly, courts have not expanded it beyond its express terms. For example, despite the potential for unfair or unlawful insurance practices, the California Supreme Court observed that CLRA did not apply to an automobile insurance

policy, "because insurance is technically neither a 'good' nor a 'service' within the meaning of the act . . . ." (*Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362, 376 [149 Cal.Rptr. 360, 584 P.2d 497].) Berry contends, however, the Supreme Court in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] acknowledged that CLRA covers credit cards. This contention is misplaced, as the court in *Discover Bank* expressly recognized that a cause of action under CLRA had not been alleged. (*Discover Bank v. Superior Court, supra*, at p. 160.)

Berry also points to specific exceptions in CLRA, notably section 1754, which excepts certain transactions relating to the sale or construction of a residence or commercial or industrial property, and section 1755, which exempts owners or employees of any advertising medium, unless they have knowledge of the deceptive practices. Berry contends the existence of specific exceptions precludes any exception by implication. In support, Berry cites *Goins v. Board of Pension Commissioners* (1979) 96 Cal.App.3d 1005, 1009–1010 [158 Cal.Rptr. 470], which held: "When a statute contains an exception to a general rule laid down therein, that exception is strictly construed . . . [and o]ther exceptions are necessarily excluded. . . . The Court cannot insert qualifying provisions or rewrite the statute." (Citations omitted.) As discussed above, however, credit cards are not included within the plain language of CLRA. It is illogical to require the Legislature to specifically exclude a particular act already excluded under the statute's general provisions.

■ We conclude neither the express text of CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the act.[3] Accordingly, the trial court did not err in sustaining AMEX's demurrers. Because Berry failed to demonstrate he could further amend his complaint to bring it within CLRA, the trial court did not err in denying leave to amend.

---

[3] Our conclusion is consistent with a number of other courts in states with consumer protection statutes very similar to CLRA, which have denied coverage to credit transactions which occur separately from any specific purchase of goods or services. (See, e.g., *Deerman v. Federal Home Loan Mortg. Corp.* (N.D.Ala. 1997) 955 F.Supp. 1393, 1399 [mortgage loan not a "good" or "service" under Alabama Deceptive Trade Practices Act]; *Riverside Nat. Bank v. Lewis* (Tex. 1980) 603 S.W.2d 169, 174 [loan unconnected with any specific good or service not covered under the Texas Deceptive Trade Practices Act]; *Haeger v. Johnson* (1976) 25 Or.App. 131, 135 [548 P.2d 532] [loan not a sale of goods or services under Oregon's Unlawful Trade Practices Act].)

## IV

### DISPOSITION

The judgment is affirmed. AMEX is entitled to its costs of this appeal.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 16, 2007, S150923. Kennard, J., did not participate therein.